**Ronald L. GAULT, Plaintiff,**

v.

**ZELLERBACH, A Mead Company, Defendant.**

**No. 1:96–CV–0963.**

United States District Court, N.D. Ohio, Eastern Division.

Oct. 10, 1997.

Alan S. Belkin, Law Offices of Alan S. Belkin, Cleveland, OH, for Plaintiff.

Brian J. Kelly, Thompson, Hine & Flory, Cleveland, OH, Teresa D. Jones, Thompson, Hine & Flory, Dayton, OH, for Defendant.

## MEMORANDUM OF OPINION
## AND ORDER

NUGENT, District Judge.

This matter is before the Court upon a Motion for Summary Judgment (Document # 15) filed by Defendant Zellerbach, A Mead Company (hereinafter Zellerbach). For the reasons that follow, Defendant's Motion is GRANTED.

### Factual Background

The following facts are derived from the affidavits of Zellerbach's Human Resources Manager, Barbara Bishop and Zellerbach's Cleveland Sales Manager, Patrick Brown, as well as the affidavit and deposition of Plaintiff Ronald Gault: Mr. Gault began working for Union Paper and Twine in 1974. Through a series of mergers and other corporate changes, by 1988 that company had become Zellerbach, a distributor of paper, packaging, and industrial supplies. From the time of his hire until his termination in 1995, Mr. Gault held the position of outside sales representative.

Zellerbach decided to re-structure its operations in 1995, in response to increased competition and decreased earnings. As part of the reorganization, Zellerbach divided its business into segments corresponding to client types. Each segment would then maintain only its most profitable accounts, thereby drastically reducing its overall number of accounts. This reduction in business dictated that fewer personnel would be needed to service the remaining accounts. Based on these revised needs, the various managers were directed to determine how many sales representatives would be needed to service the remaining accounts. If fewer sales representatives would be needed, the managers were to assess the existing sales representatives and make termination decisions accordingly.

Mr. Gault was assigned to the Business Communication Papers section which had six sales representatives aged 60, 58, 48, 47, 45, and 40. After paring the accounts to only the most profitable ones, the managers concluded that only four representatives were needed. Consequently, they rated and ranked the six, and decided to terminate the two who were ranked lowest. Of the six, Mr. Gault ranked last and Dave Watts ranked second last, therefore, they both were terminated. At the time of the terminations, Mr. Gault was fifty-eight years old and Mr. Watts was forty-five years old.

### Procedural History

Mr. Gault filed a Complaint against the Defendant on May 8, 1996 alleging that Zellerbach wrongfully terminated him in violation of the Age Discrimination in Employment Act, 29 U.S.C. 621, *et seq.* (hereinafter ADEA). Zellerbach filed an Answer on May 29, 1996 and denied the allegations of discrimination.

Following discovery, Zellerbach filed a Motion for Summary Judgment. Mr. Gault filed a Brief in Opposition to the Motion for Summary Judgment. Zellerbach then filed a Reply as well as a Motion to Strike the material attached to Plaintiff's brief. The Motion for Summary Judgment and the other briefs are now before the Court.

### Summary Judgment Standard

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion "in the light most

favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct..993, 994, 8 L.Ed.2d 176 (1962), *see also U.S. v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff" *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson,* at 248–49, 106 S.Ct. at 2510–11 (1986)). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citation omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 149 (6th Cir.1995). The text of FED. R. CIV. P. 56(e) states:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the non-moving party as an automatic grant of summary judgment, where otherwise appropriate.

■ Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that, " 'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.' " *Wiley v. U.S.,* 20 F.3d 222 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

[it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley,* at 225–26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson,* 477 U.S. at 248,

106 S.Ct. at 2510. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. at 2511. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails:

> the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

### Discussion

Plaintiff alleges in his Complaint that Zellerbach terminated him in violation of the ADEA. Zellerbach denied this allegation and argued that it properly terminated Mr. Gault pursuant to a reduction in force (hereinafter RIF). Mr. Gault acknowledges the RIF context for purposes of summary judgment, therefore, the Motion for Summary Judgment and Plaintiff's claim will be analyzed as a RIF case.

■ In analyzing a complaint of age discrimination in a RIF context, it is important to be mindful that the ADEA "was not intended to protect older workers from the often harsh economic realities of common business decisions and the hardships associated with corporate reorganizations, downsizing, plant closings and relocations." *Allen v. Diebold, Inc.,* 33 F.3d 674, 677 (6th Cir.1994). Therefore, a plaintiff "terminated amidst a corporate reorganization carries a greater burden of supporting charges of discrimination than an employee who was not terminated for similar reasons." *Ridenour v. Lawson Co.,* 791 F.2d 52, 57 (6th Cir.1986). Thus, in order to establish a prima facie case of discrimination in a RIF context, a plaintiff must not only demonstrate that: 1) he was a member of a protected class; 2) he was subjected to an adverse employment action;

and, 3) he was qualified for the position. Then, in lieu of showing that he was replaced by a younger person as required in a traditional ADEA case, a plaintiff in a RIF case must also present 4) "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp,* 896 F.2d 1457, 1465 (6th Cir.1990).

If a plaintiff can carry this more difficult burden and establish a prima facie case, he creates a presumption of discrimination, and the analysis proceeds under the now familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny.

■ In this case, Zellerbach filed a Motion for Summary Judgment arguing that it properly terminated Mr. Gault as part of a RIF and that Mr. Gault cannot establish a prima facie case of age discrimination. Zellerbach further argues that even if Mr. Gault could establish a prima facie case, it provided a legitimate, non-discriminatory reason for his termination, and Mr. Gault has presented no evidence of pretext. In support of this Motion, Zellerbach presented affidavits of both its Human Resources Manager and Cleveland Sales Manager, as well as business records related to the reorganization. This evidence demonstrates that pursuant to Zellerbach's RIF, the number of outside sales representatives needed to service the Business Communication Papers accounts was reduced from six to four. Furthermore, the evidence shows that of the six employees assessed by management, Mr. Gault ranked last, and that he and Mr. Watts, who ranked second last, were then terminated. Their accounts were divided between the remaining sales representatives, who handled them in addition to their existing accounts.

In an effort to defeat Zellerbach's Motion for Summary Judgment, Mr. Gault filed a Brief in Opposition in which he argued that Zellerbach used the RIF as an excuse to replace him with John Webb, aged 30. In addition, Mr. Gault argues that a statistical report by Thomas Nieberding, Ph.D. shows that Zellerbach's personnel decisions were

not made on an age neutral basis.[1] Mr. Gault further contends that past performance reviews and congratulatory letters provide proof that Zellerbach did not terminate him due to his qualifications.

Nevertheless, despite the foregoing arguments, Mr. Gault has failed to demonstrate a genuine issue of material fact as to age discrimination. After Zellerbach demonstrated that it terminated him in accordance with a RIF, Mr. Gault was required to present evidence tending to show that he was singled out by Zellerbach for impermissible reasons. He has failed to do so. First, the evidence reveals that Mr. Webb did not work in the Business Communication Papers segment and that Mr. Brown hired John Webb in September, 1995, two months before Mr. Brown learned of the RIF. Second, the statistics even if admissible, fail to demonstrate a genuine issue of material fact as to Zellerbach's motivations because the statistics are analyzed completely out of context.[2] Third, Plaintiff's assertions that he was not a poor sales person also fails to provide evidence that Zellerbach singled out Mr. Gault for impermissible reasons because there has been no contention that Zellerbach fired Mr. Gault because he was unqualified. Rather, the evidence shows that Zellerbach engaged in a RIF, that Mr. Gault ranked lowest of the existing sales representatives, and therefore, had to be terminated when numbers needed to be reduced.

## Conclusion

For the foregoing reasons, Zellerbach has demonstrated that no genuine issues of material fact remain to be litigated and that it is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment is GRANTED and this case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

1. Zellerbach filed a Motion to Strike this material arguing, inter alia, that the report is in admissible pursuant to FED. R. CIV. P. 56(e) because it is unsworn, is not in the form of an affidavit, and gives no indication that Dr. Nieberding is qualified to render an expert opinion. However, as demonstrated, infra, even if admissible, Dr. Nieberding's report fails to demonstrate a genuine issue of material fact.

2. The report uses six allegedly RIF'd employees—including the Plaintiff—to demonstrate non-neutral decision making on the part of Zellerbach. However, the evidence reveals that at least two of the employees used for the statistics voluntarily retired and were not part of a RIF. Furthermore, each of the six, other than the Plaintiff, left the company two to three years before the 1995 RIF, yet, curiously, Mr. Watts, who was terminated as part of the 1995 RIF along with Mr. Gault, was not included in this allegedly expert statistical report.