NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0082n.06
Filed: February 2, 2009

No. 07-2547

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT


KELLI BERTL, as Personal Representative )
of the Estate of LARRY BERTL, Deceased, )
　　　　　　　　　　　　　　　　　　　 )
　　　　Plaintiff-Appellee, )
　　　　　　　　　　　　　　　　　　　 )
v. )
　　　　　　　　　　　　　　　　　　　 ) On Appeal from the United States District
CITY OF WESTLAND, et al., ) Court for the Eastern District of Michigan
　　　　　　　　　　　　　　　　　　　 )
　　　　Defendant )
　　　　　　　　　　　　　　　　　　　 ) OPINION
　　　　and )
　　　　　　　　　　　　　　　　　　　 )
RENELLA THOMAS, R.N., )
　　　　　　　　　　　　　　　　　　　 )
　　　　Defendant-Appellant. )
_____ )


**Before: MARTIN and KETHLEDGE, Circuit Judges; and CARR, District Judge.**[*]

　　　　**JAMES G. CARR, DISTRICT JUDGE.** This is an appeal from the district court's denial

of Nurse Renella Thomas' motion for summary judgment on qualified immunity grounds. Plaintiff

Kelli Bertl, representative of the estate of Larry Bertl, brought a 42 U.S.C. § 1983 claim against

Thomas and other defendants, alleging deliberate indifference to Bertl's medical needs. The district

court rejected Thomas' qualified immunity defense and held that there existed a genuine issue of

_____

[*] The Honorable James G. Carr, Chief Judge of the Northern District of Ohio, sitting by
designation.

material fact as to "whether Thomas was deliberately indifferent to Bertl's serious medical needs." *Bertl v. City of Westland*, 2007 WL 3333011, at \*13 (E.D. Mich. Nov. 9, 2007).

For the reasons that follow, we **AFFIRM** the district court's denial of Thomas' motion for summary judgment.

## Background

On March 1, 2004, a Westland Michigan Police Department Officer arrested Larry Bertl for driving while intoxicated. His blood alcohol level measured 0.26. The next day, he was arraigned in the 18th Judicial District Court. The court observed Bertl shaking. Bertl advised the court that he had a prescription for Phenobarbitol, but had not taken the medication since the day before. On March 3, Bertl appeared before the 18th District Court for sentencing. The court noted Bertl's display of alcohol withdrawal symptoms, known as D.T.s, or delirium tremens.

At approximately 6:30 p.m. that same day, two transport police officers from the Isabella County Sheriff's Department arrived at the Westland Police Department to pick up prisoners, including Bertl. After leaving the Westland Police Department, the officers stopped at the Livonia Police Department to transport additional prisoners. They noted, on arriving at the Livonia Police Department, that Bertl could not clearly respond to questions. The officers believed he might be experiencing delirium tremens, and returned him to the Westland Police Department approximately one hour later, because according to their policy, they could not transfer ill prisoners.

The next day, at approximately 4:30 p.m., Wayne County Sheriff's Department officers, Corporal Arthur Vaughn and Officer Tonya Hill, arrived at the Westland Police Department to pick up prisoners. Westland Police officers told Officer Vaughn that Bertl had delirium tremens, but that he had taken his medicine recently and obtained medical clearance for the transfer. Vaughn and Hill

2

assisted Bertl into the Wayne County Sheriff's transport van, and proceeded to the Livonia Police Department. During that trip, Bertl became increasingly delusional.

By the time they arrived at the Dickerson Police Facility, Officers Vaughn and Sevon had to carry Bertl from the van to the registry area. They took him to Cell # 6 and laid him on the floor. Vaughn advised his supervisor that Bertl might be in delirium tremens and needed medical attention. Sergeant Gordish called for medical assistance. Defendant Renella Thomas, R.N., responded to the call. She asked Gordish for information regarding Bertl's charge, and learned that he was in custody for an alcohol-related charge, an OUIL [operating under the influence of liquor].

According to the statements of various prisoners, Bertl visibly suffered from a severe medical condition. Prisoners stated that he appeared unconscious and nonresponsive and that he shook uncontrollably. Thomas approached, but never entered, the cell. She refused to evaluate him until the guards "dressed out"[1] Bertl in prison clothes. She also stated that the guards should dress him out before taking him to the third floor medical clinic. She left the registry area shortly thereafter and never returned.

The officers who arrived to "dress out" Bertl noticed that he had stopped breathing. Prison doctors and nurses commenced CPR, and called an ambulance. EMT arrived and took Bertl to the Detroit Receiving Hospital, where he was pronounced dead.

Kelli Bertl, representative of Bertl's estate, originally filed this complaint in Wayne County Circuit Court in 2004, claiming violations of 42 U.S.C. § 1983 and state law against the City of Westland, individual Westland defendants, Wayne County and individual Wayne County defendants.

---

[1]Dressing out a prisoner refers to the process of ensuring that a prisoner is not carrying contraband and/or dangerous weapons.

Wayne County Defendants removed the case to federal court. Bertl filed her second amended complaint in 2006. The City of Westland and individual Westland defendants were dismissed from the case, pursuant to a settlement agreement. The Wayne County Defendants filed a motion for summary judgment in June 2007. Nurse Thomas filed a motion for summary judgment that same month. At a motion hearing, Bertl agreed to dismiss the state law gross negligence claim against all defendants.

The case came before the district court, which granted summary judgment to all defendants except Nurse Thomas. The district court concluded that evidence that Thomas failed to enter Bertl's cell and check his vital signs, ordered that guards dress Bertl out before taking him to the medical clinic and failed to call a doctor established a genuine issue of material fact as to whether Thomas was deliberately indifferent to Bertl's medical needs.

## Discussion

## I. Jurisdiction

Bertl argues that we lack jurisdiction over this appeal because of outstanding factual disagreements between the parties. The parties dispute whether or not Nurse Thomas entered Bertl's cell and took his vital signs and whether or not Bertl lay on the floor of his cell, face down and unresponsive.

Appellate courts have jurisdiction over the final decisions of district courts under 28 U.S.C. § 1291. A district court's denial of a qualified immunity claim, to the extent that the denial turns on an issue of law, is considered a final decision under the collateral order doctrine, and is thus, immediately appealable. *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 545-46 (1949); *see also Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) ("A district court's denial of a claim of qualified

4

immunity, to the extent that it turns on an issue of law, is an appealable final decision within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."). If an appeal of a district court's denial of qualified immunity is based on issues of fact, we lack jurisdiction. The issue of deliberate indifference to an inmate's medical needs is a mixed question of fact and law. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999) (en banc). "We treat mixed questions as legal questions rather than as factual questions." *Id*.

We have held that "if . . . the defendant disputes the plaintiff's version of the story, the defendant must nonetheless be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998); *but cf. Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 402-03 (6th Cir. 2007) (court "may consider a pure question of law, despite the defendants' failure to concede the plaintiff's version of the facts for purposes of the interlocutory appeal" court should determine whether the facts as alleged by the plaintiff constitute the violation of clearly established law.).

Given the existence of factual disputes between plaintiff and defendant, we have jurisdiction solely to consider the issue of law, namely, whether the facts alleged by Bertl establish that Nurse Thomas violated Larry Bertl's clearly established constitutional rights. For purposes of this appeal, we accept plaintiff's version of the facts as true, and resolve any factual disputes in plaintiff's favor. Thomas states a willingness to concede to Bertl's version of the facts, but at the same time challenges Bertl's presentation of hearsay evidence.

## II. Consideration of Hearsay Evidence

Thomas argues that the district court wrongly considered hearsay evidence in its analysis of Bertl's § 1983 claim. Bertl retorts that Thomas waived her objection to the consideration of hearsay

evidence by failing to raise the issue at the district court level. *See, e.g., Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) ("If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and we will review such objections only to avoid a gross miscarriage of justice.").

Thomas, in response, claims that she did raise the issue before the district court. At a hearing on Thomas' summary judgment motion, Thomas' attorney objected to a prison official's report, arguing that "inadmissible hearsay reports of police officers [do] not trump sworn testimony. . ." J.A. at 765. Thomas therefore did contend that the reports were inadmissible at the district court level. She did not waive her objection to the court's consideration of hearsay evidence.

Thomas objects to Bertl's introduction of statements from other prisoners and officers in the Wayne County Investigation Report. Those statements support Bertl's contention that Thomas failed to enter Bertl's cell and take his vital signs. Thomas states that she did take Bertl's vital signs. The contested evidence also supports the contention that Bertl displayed symptoms that indicated a serious medical need. Thomas presents Sixth Circuit precedent stating that hearsay evidence cannot be considered on a summary judgment motion. Bertl, on the other hand, asserts that the district court can consider the hearsay evidence because the hearsay will be presented in an admissible form at trial.

We do not have jurisdiction to consider factual and evidentiary disputes arising in interlocutory appeals, even if those disputes are based on inadmissible hearsay. *Ellis v. Washington County and Johnson City, Tenn.*, 198 F.3d 225, 229 (6th Cir. 1999), *see also Parks v. Warren Corr. Inst.*, 2002 WL 31553922, at *4 (6th Cir.) (finding that court could not consider arguments relating

to factual disputes and that "challenges to the quantity and quality of evidence [could not be the] basis for . . . an appeal."). *But see  Scott v. Harris,* 550 U.S. 372, 127 S. Ct. 1769, 1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). We cannot revisit or review evidentiary rulings on interlocutory appeal. The district court implicitly overruled Thomas' hearsay objection, and that ruling stands for purposes of this decision.

We have dismissed cases for lack of jurisdiction where the district court found that a question of fact remained, and where a deliberate indifference claim depended on the resolution of the factual dispute. *See, e.g., Ellis,* 198 F.3d at 229. We do not, however, dismiss this appeal in its entirety for lack of jurisdiction as we did in *Ellis* and *Parks* because we may review the qualified immunity issue to the extent that it is based on an issue of law. *McGraw v. Madison Tp.*, 231 F. App'x 419, 424 (6th Cir. 2007).

For purposes of this appeal, therefore, we view the facts in the light most favorable to plaintiff Bertl, and consider only the question of law: whether the facts as alleged show that Nurse Thomas violated Bertl's constitutional or statutory rights, and whether those rights were clearly established at the time of Thomas' alleged misconduct.

### III. Qualified Immunity Analysis

To state a claim under § 1983, a plaintiff must allege that (1) a right secured by the Constitution or laws of the United States has been violated, and, (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant may assert qualified immunity in response to such a claim, which enables the defendant

7

to avoid standing trial or enduring the other burdens of litigation. *Harrison v. Ash*, 539 F.3d 510, 514 (6th Cir. 2008).

To determine whether to grant summary judgment on the basis of the qualified immunity defense, we employ a multi-pronged approach. We examine: (1) whether, after viewing facts in the light most favorable to the plaintiff, the plaintiff has shown that defendant's conduct violated plaintiff's constitutional or statutory rights, and (2) whether those rights were clearly established at the time of the alleged violation. *See, e.g., Phillips v. Roane County, Tenn.*, 534 F.3d 531, 538-39 (6th Cir. 2008); *Curry ex rel. Curry v. Hensiner*, 513 F.3d 570, 576 (6th Cir. 2008). We sometimes add another inquiry: (3) "whether plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established rights." *Id.* "The third inquiry impacts the analysis when *despite* the violation of a clearly established constitutional right, the official's conduct was objectively reasonable, and so should still enjoy qualified immunity." *Id* (emphasis in original). In sum, we must determine whether "the conduct complained of constitute[d] a clearly established violation of statutory or constitutional law at the time that it occurred[.]" *Ohio Civil Serv. Employees Ass'n v. Seiter,* 858 F.2d 1171, 1174 (6th Cir. 1988).

### A. Violation of Statutory or Constitutional Rights

The Supreme Court has held that deliberate indifference to the medical needs of prisoners constitutes "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment, and thus gives rise to a § 1983 claim. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976).

An Eighth Amendment deliberate indifference claim has both an objective and subjective component. The objective component requires the plaintiff to show the existence of a "sufficiently

8

serious" medical need. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The subjective component requires the plaintiff to demonstrate that the defending official was aware of "facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and also drew the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Subjective knowledge on the part of the official is a "question of fact subject to demonstration in the usual ways." *Id*. at 842. A plaintiff can draw inferences based on circumstantial evidence and "a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*.

### 1. Existence of a Sufficiently Serious Medical Need

We have held that a medical need is sufficiently serious when it is obvious to a lay person. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004).We have also recognized that delirium tremens constitutes a serious medical need, as have other circuits. *See Speers v. County of Berrien*, 196 F. App'x 390, 394 (6th Cir. 2006) (unpublished); *see also Thompson v. Upshur County, TX*, 245 F.3d 447, 457 (5th Cir. 2001).

Bertl demonstrated the existence of a sufficiently serious medical need. The evidence shows that officers carried Bertl into his cell and laid him on the floor of his cell. Lay people (guards and prisoners) observed him face down and unresponsive, and recognized his need for medical assistance. Bertl suffered from delirium tremens. Bertl thus satisfied the objective component of the Eighth Amendment deliberate indifference claim.

### 2. Nurse Thomas' Subjective Knowledge

The subjective component requires that Bertl demonstrate Thomas' awareness of "facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and also that she drew the inference. *Farmer, 511 U.S. at 837.* Bertl can demonstrate Thomas' subjective

9

knowledge through facts and inferences drawn from circumstantial evidence. *Id*. at 842. We can find subjective knowledge based on the obviousness of the risk. *Id*.

The subjective component exists to prevent the "constitutionalization of medical malpractice claims." *Comstock,* 273 F.3d at 703. "Negligence in diagnosing a medical condition" does not constitute unconstitutional deliberate indifference. *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995). Similarly, a prison doctor who provides careless or ineffective treatment merely displays incompetence, not unconstitutional deliberate indifference. *Comstock,* 273 F.3d at 703. If a prison official knew of a risk to inmate health or safety, and reasonably responded to the risk, that official is free from liability, even if he failed ultimately to prevent harm. *Farmer,* 511 U.S. at 844.

Despite the caution against constitutionalizing medical malpractice claims, a plaintiff does not need to show "that the official acted for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. ("Purposeful or knowing conduct is not . . . necessary to satisfy the *mens rea* requirement of deliberate indifference for claims challenging conditions of confinement."). Instead, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. The Supreme Court has also held that a prison official "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id.* at 843, n.8.

Given the evidence presented by Bertl, a jury could find that Thomas possessed subjective knowledge, and that Bertl satisfied the subjective component of the deliberate indifference claim. Circumstantial evidence indicates that Nurse Thomas possessed awareness of facts from which she could infer that a substantial risk of harm existed, and that she also drew that inference.

10

Prison guards called for medical assistance because of Bertl's visibly serious medical condition. When Thomas arrived, they informed her that Bertl had been charged with an OUIL. She knew that he had not consumed alcohol for over 48 hours. J.A. at 427. She observed Bertl lying face down on the floor of his cell, almost comatose, unresponsive and having seizure-like spasms. Nurse Thomas, however, refused to enter the cell and take his vital signs. She instead demanded that guards dress him out first, and take him to the medical clinic for examination by a doctor only after they dressed him out. One of the prison guards questioned whether there was enough time to dress him out, but she responded that there was time. She thereafter left the cell and did not return. She merely went to the third floor medical clinic and told a doctor that the guards would be bringing up a prisoner. *Id*. According to her deposition testimony, she failed to give doctors further information or even to describe his condition. *Id*. Such conduct does not fall under the "medical malpractice" rubric, but rather, a jury could find that it rises to the level of deliberate indifference.

Nurse Thomas did not comply with stated jail policy. According to Wayne County Jail protocol, she should have called a doctor immediately after witnessing Bertl's condition. The protocol states:

Report immediately to physician in the clinic or on-call physician if patient/inmate exhibits any of the following:

1. Temperature greater than or equal to 100 degrees F.
2. Blood pressure (systolic greater than or equal to 140/or diastolic greater than or equal to ninety).
3. Pulse greater than or equal to 100
4. Vomiting
5. Unresponsiveness
6. Confusion Stupor
7. Seizures
8. Delirium

11

J.A. at 385.

Thomas' seeming nonchalance in the face of Bertl's visibly severe medical symptoms belies her argument that her conduct, at most, constituted negligence or mistaken judgment. Bertl displayed shaking, delirium, stupor and unresponsiveness. The totality of the facts presented provides enough circumstantial evidence for a jury to conclude that Thomas was aware of facts from which the inference could be drawn that a sufficiently serious medical need existed, and that she drew that inference.

### 3. Avoidance of Knowledge

The Supreme Court, in *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994), clarified the meaning of "deliberate indifference," requiring a subjective standard of knowledge that did not include proving that the defendant intended harm. The Supreme Court also held that a prison official could not escape liability by avoiding knowledge:

> [A prison official will not] escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist (as when a prison official is aware of a high probability of facts indicating that one prisoner has planned an attack on another but resists opportunities to obtain final confirmation; or when a prison official knows that some diseases are communicable and that a single needle is being used to administer flu shots to prisoners but refuses to listen to a subordinate who he strongly suspects will attempt to explain the associated risk of transmitting disease). When instructing juries in deliberate indifference cases with such issues of proof, courts should be careful to ensure that the requirement of subjective culpability is not lost. It is not enough merely to find that a reasonable person would have known, or that the defendant should have known, and juries should be instructed accordingly.

*Id*. at 842 n. 8.

We have denied summary judgment on qualified immunity grounds to prison officials based on their avoidance of knowledge. *See, e.g., Linden v. Washtenaw County,* 167 Fed. Appx. 410, 424

12

(6th Cir. 2006) (unpublished) (affirming district court's denial of summary judgment to classification officer, finding that officer could not "escape a finding of his subjective knowledge of risk just because he declined to confirm the inferences of risk"); *Phillips v. Roane County, Tenn.*, 534 F.3d 531, 541 (6th Cir. 2008) (denying summary judgment, reasoning that officers avoided knowledge)*; Comstock,* 273 F.3d at 706 (psychologist could not "escape a finding of his subjective knowledge of risk just because he declined to confirm inferences of risk . . .").

The facts indicate that Nurse Thomas refused to verify underlying facts that she strongly suspected to be true and failed to confirm inferences of risk that she strongly suspected to exist. Prisoners described Bertl using the following terms: "unconscious" "shaking on the floor of the cell" "shaking uncontrollably" "did not appear to be breathing" "his left hand was twisted behind his body and his right hand was stretched out from his body" "his right leg was kicking and he appeared to be having a seizure" "unresponsive, pale and turning a bluish color" "unconscious and unresponsive" "body was twitching and he appeared to be in an unconscious state" and "twitching and unresponsive." Despite these glaring symptoms, Thomas refused to check on Bertl or take his vital signs. Such avoidance of knowledge does not permit Thomas to escape liability.

### B. The Prohibition Against Deliberate Indifference to an Inmate's Serious Medical Condition is Clearly Established

After finding sufficient evidence to show that defendant's conduct violated plaintiff's constitutional rights, we must determine if that right was clearly established. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Justice Scalia explained the "clearly established" test in detail:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has

13

previously been held unlawful . . . but it is to say that in light of preexisting law the unlawfulness must be apparent.

*Id*. at 640.

We must determine whether, in light of preexisting law, the unlawfulness of Thomas' actions would be apparent to a reasonable official. We look first to the decisions of the Supreme Court, then to the Sixth Circuit and finally to other circuits to determine whether the claimed right was clearly established when the injury occurred. *Black v. Parke*, 4 F.3d 442, 445 (6th Cir. 1993). The case law must be clear, "such that the contours of the rule are sufficiently clear to put a reasonable official on notice that what he is doing is probably unlawful." *Sheets v. Mullins*, 287 F.3d 581, 589 (6th Cir. 2002).

The Supreme Court has held that deliberate indifference to a prisoner's medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle,* 429 U.S. at 104. Similarly, the Sixth Circuit has held that "acknowledging, but yet ignoring, the obviously debilitated state of a prisoner in need of medical attention is conduct that would alert a reasonable person to the likelihood of personal liability." *Taylor v. Franklin County, Ky.,* 104 F. App'x 531, 543 (6th Cir. 2004) (unpublished). Bertl has provided enough evidence to show that Thomas' conduct violated clearly established law, and the unlawfulness of those actions would be apparent to a reasonable official. *See Scicluna v. Wells*, 345 F.3d 441, 447 (6th Cir. 2003) (finding that *Estelle's* prohibition of deliberate indifference to an inmate's serious medical needs is clearly established law).

**Conclusion**

14

For the foregoing reasons, we **AFFIRM** the district court's denial of summary judgment as to defendant Renella Thomas, R.N.